## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FRANK DEITERMAN,                    )
                                    )
          Petitioner,               )
                                    )          CIVIL ACTION
v.                                  )
                                    )          No. 05-3398-CM
                                    )
STATE OF KANSAS, et al.,            )
                                    )
          Respondents.              )
_____)

## MEMORANDUM AND ORDER

Frank Deiterman, a prisoner at the El Dorado Correctional Facility in El Dorado, Kansas,

filed a petition for writ of habeas corpus (Doc. 1).  Petitioner was convicted in state court of capital

murder, conspiracy to commit capital murder, and aggravated robbery.  He is now serving a term of

life imprisonment with no possibility of parole for forty years plus 51 months.  He seeks a writ

pursuant to 28 U.S.C. § 2254.  Specifically, petitioner requests federal relief on the following

grounds: (1) the court should have ordered a change of venue; (2) the court erred when it failed to

instruct the jury pool to disregard prejudicial remarks made by potential jurors during voir dire; (3)

the court erred in evidentiary rulings regarding the questioning of Meghan Deiterman about her

probation and bipolar disorder; (4) the court erred in its evidentiary rulings during the testimony of

John Barnes; (5) the court should not have permitted the prosecution to question petitioner about

why he did not produce certain evidence; (6) during closing argument, the prosecution improperly

referenced defense counsel's opening statement; (7) the court improperly advised petitioner's father

before testifying that he had a right not to incriminate himself; (8) cumulative error identified in

petitioner's direct appeal denied petitioner a fair trial; (9) the verdict was not supported by sufficient

evidence; (10) petitioner's sentence was not supported by the facts; (11) petitioner's trial counsel was ineffective in several ways; (12) petitioner's trial counsel was related to the murder victim, thereby denying petitioner a fair trial; and (13) the prosecution withheld critical information regarding two witnesses and allowed them to testify falsely, denying petitioner a fair trial. The court has reviewed the record and petitioner's arguments, and finds that habeas relief is not warranted. For the following reasons, the petition is denied.

## I.      STANDARD OF REVIEW

Because petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, the court reviews petitioner's claims pursuant to the provisions of the Act. *Wallace v. Ward*, 191 F.3d 1235, 1240 (10th Cir. 1999). The Act permits a court to grant a writ only if one of two circumstances is present: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Absent clear and convincing evidence to the contrary, the court presumes that state court factual findings are correct. *Id.* § 2254(e)(1).

## II.      BACKGROUND

The Kansas Court of Appeals succinctly summarized the facts of the case in its opinion on petitioner's Kan. Stat. Ann. § 60-1507 motion:

> James Patrick Livingston was found murdered outside of his home in Cherokee County. He died from two shotgun blasts, with the fatal shot made to the back of the head from close range. The evidence revealed that the victim's wife initiated a "murder-for-hire scheme" that involved [petitioner], Alton Richard Sheffield (Mrs. Livingston's brother-in-law), and Darrell Wilkerson (the fiance of Sheffield's daughter). [Petitioner] raised an alibi defense but was convicted on all counts.

*Deiterman v. State*, No. 91,489, 2005 WL 400408, at *1 (Kan. Ct. App. Feb. 18, 2005).

## III.   DISCUSSION

### A.   Change of Venue

Petitioner claims that the regional news media extensively covered the murder of James Patrick Livingston, which biased the jury pool.  The media covered the investigation, the pretrial proceedings, and the trial insofar as they could get information from the police and/or the court. Before trial, petitioner requested a change of venue based on all of the media attention the case had received.

The state trial court has discretion whether to grant a change of venue.  "Given the unique position occupied by the trial judge, who has an opportunity to consider the demeanor and responses of prospective jurors, the trial judge's decision that jurors will be able to disregard any impressions based on pretrial publicity is entitled to deference."  *Hill v. Roberts*, 788 F. Supp. 515, 516 (D. Kan. 1992) (citing *Patton v. Yount*, 467 U.S. 1025, 1038–39 (1984)).  A federal habeas court will only overturn the state trial court's findings on jury impartiality to correct manifest error.  *Mu'Min v. Virginia*, 500 U.S. 415, 428–29 (1991) (citing *Patton*, 467 U.S. at 1031).  Although the constitution guarantees defendants "a fair trial by a panel of impartial, 'indifferent' jurors," it does not require that jurors lack any previous knowledge of the incidents involved.  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  The constitution only requires that a juror be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court."  *Id.* at 723.

Petitioner supported his motion for change of venue with about thirty newspaper articles from the area.  (R. Vol. 2 at 244–81.)  The court has reviewed the articles and finds that, with the exception of two articles written after petitioner's preliminary hearing, they are factually-based and

not inflammatory.  Although the two articles contained stronger language and details of testimony given by petitioner's co-conspirators, the articles clearly stated that they were relaying the allegations of the prosecutor and tempered those allegations by stating petitioner's position, as well. (R. Vol. 2 at 259–63.)  They were published approximately six months before trial.  Moreover, there is no evidence that the articles prejudiced the jurors.  The jury selection in this case went smoothly and quickly.  The trial voir dire was thorough and included discussion of the pretrial publicity.  None of the jurors selected indicated that they could not set aside anything they had heard about the case to decide the case based on the evidence presented in court.  Although such assurances by prospective jurors are not dispositive, petitioner has the burden to demonstrate "the actual existence of such an opinion in the mind of the juror[s] as will raise the presumption of partiality. . . ." *Irvin*, 366 U.S. at 723 (internal quotation marks and citation omitted).  He has not met that burden.  The Kansas Court of Appeals made a reasonable determination of the facts and correctly applied federal law on this issue.

**B.**      **Failure to Instruct Jury Pool to Ignore Statements**

Petitioner's second claim is that during voir dire, potential jurors made statements that tainted the jury pool.  This claim is procedurally defaulted under the independent and adequate state ground doctrine.  This doctrine prohibits federal habeas relief when the last state court to which the petitioner presented his federal claims "clearly and expressly" relied on an independent and adequate state law ground to resolve the petitioner's claims, unless the petitioner demonstrates (1) cause for the default and actual prejudice, or (2) a fundamental miscarriage of justice that will occur if the court fails to consider the claim.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To be "independent," the state appellate court's decision must rely on state law, rather than federal law. *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998).  A state law ground is adequate if it is

"strictly or regularly followed" and "applied evenhandedly to all similar claims." *Id.* (internal citations and quotations omitted).

When petitioner raised this issue on direct appeal, the Kansas Supreme Court held that the claim was procedurally defaulted because petitioner failed to raise a contemporaneous objection or request an instruction from the trial court. The Kansas Supreme Court clearly and expressly stated that a state procedural rule barred petitioner's claim. This rule is followed regularly and applied evenhandedly. *See, e.g., State v. Smith*, 993 P.2d 1213, 1229 (Kan. 1999); *State v. Gardner*, 955 P.2d 1199, 1207 (Kan. 1998). Petitioner has not presented any evidence showing cause for the default or actual prejudice as a result of the alleged federal law violation. Although a petitioner may show cause for default by showing that he received ineffective assistance of counsel, *see Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998), petitioner fails to make that showing here. He alleges that his trial counsel was ineffective for failing to ask the trial court to instruct the jury pool to disregard statements of other jurors. As is explained in more detail later in this Memorandum and Order, petitioner's ineffective assistance claim lacks merit.

Even if this claim were not procedurally defaulted, the record does not contain prejudicial statements sufficient to deny petitioner a fair trial. Two jurors, Thomas Dietz and Danny Jacquinet, both stated during voir dire that they had read newspaper articles and seen news stories that made them think that petitioner might be guilty. (R. Vol. 16 at 80–82, 157–58, 161.) But in front of the other potential jurors, they also stated that they could put aside what they had read or seen and decide the case based only on the evidence presented at trial. After the jury was picked, the court proceeded to select alternates. One potential alternate stated, "I think the man's guilty myself." (R. Vol. 16 at 185.) The court excused him without drawing further attention to his statement. Moreover, throughout the voir dire process, the court and attorneys repeatedly reminded jurors that

they were only to consider the evidence presented at trial and that they were to disregard anything they had previously heard about the case.  These isolated statements were not so prejudicial as to deny petitioner a fair trial.

**C.      Meghan Deiterman's Probation and Bipolar Disorder**

Petitioner next argues that the court should have allowed him to cross-examine Meghan Deiterman about her probationary status and bipolar disorder.  Petitioner presented this claim to the state courts as an erroneous evidentiary ruling claim.  On federal habeas review, this court will not review questions about the admissibility of evidence.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  This court's review is limited to a determination of whether the evidentiary ruling was so prejudicial as to deny petitioner a fair trial.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999).

The prosecution called Ms. Deiterman, petitioner's wife, to testify that petitioner was not with her in Texas at the time of the murder.  On cross-examination, petitioner's counsel attempted to question Ms. Deiterman about whether she suffered from bipolar disorder.  The prosecution objected, and the court ruled that the questioning was beyond the scope of the direct exam.  Petitioner's counsel then asked Ms. Deiterman about whether she was on probation.  She answered, but the court did not allow counsel to explore the matter further.

Neither of these rulings denied petitioner a fair trial.  In the scope of the whole trial, Ms. Deiterman's testimony was insignificant.  Her testimony about where petitioner was during the time of the murder was cumulative to that of others.  During his own testimony, petitioner mentioned that Ms. Deiterman was "on different kinds of medication" and that she was "liable to say anything."  (R. Vol. 21 at 220.)  And the jury could draw the logical inferences from the fact that Ms. Deiterman was on probation.  Petitioner is not entitled to relief on this issue.

**D.      Questions of John Barnes**

Petitioner next argues that the court should not have let John Barnes testify that Meghan Deiterman told him that petitioner committed the murder. Petitioner also presented this claim to the state courts as an erroneous evidentiary ruling claim. Because it was not framed as a constitutional claim, this court will not reexamine the state court determination on a state law question. *See Estelle*, 502 U.S. at 67–68. However, to determine whether the testimony rendered the trial fundamentally unfair, the court has reviewed the testimony of which petitioner complains. This testimony was a fair impeachment of Ms. Deiterman's statement that she had not told Mr. Barnes that petitioner committed the murder. The trial judge was careful to only admit the statement to the extent that it reflected what Ms. Deiterman told Mr. Barnes, not whether she personally thought that petitioner committed the murder. (R. Vol. 20 at 62–68.) Defense counsel cross-examined Mr. Barnes thoroughly on the issue, and the court determines that the testimony did not render the trial fundamentally unfair.

**E.     Questioning of Petitioner about the Absence of Evidence**

Petitioner contends that the court should not have allowed the prosecutor to ask him why he did not produce certain evidence in support of his alibi defense. Again, this issue was presented to the state courts—and ruled on by the state courts—as an evidentiary issue. The court will not reexamine it here. The questioning was not so prejudicial as to deny petitioner a fair trial. Petitioner elected to take the stand and was not immune to cross-examination about his alibi defense.

**F.     Prosecutor's Comments During Closing Argument**

During closing argument, the prosecutor printed and enlarged a portion of defense counsel's opening statement to point out discrepancies between the statement and the evidence petitioner actually presented at trial. The prosecutor also suggested that part of petitioner's story was fabricated. In evaluating a claim of prosecutorial misconduct, the court considers "whether the

-7-

prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted).

As to petitioner's first claim, a prosecutor is "free to comment on a defendant's failure to call certain witnesses or present certain testimony," as long as he does not comment on the defendant's failure to testify. *Pickens v. Gibson*, 206 F.3d 988, 999 (10th Cir. 2000) (internal quotation marks and citation omitted). The prosecutor's comments were fair and proper.

As for petitioner's second claim, the prosecutor was within constitutional boundaries. He suggested that a discrepancy existed between the petitioner's story and other evidence and stated that because of the discrepancy, the testimony of petitioner and his father was unworthy of belief. (R. Vol. 22 at 73–74.) Although petitioner also appears to claim that the court improperly allowed the prosecutor to suggest that defense counsel fabricated the story, the court actually sustained that portion of counsel's objection and the prosecutor clarified that he did not mean to infer that defense counsel concocted the story. (R. Vol. 22 at 73.)

The Kansas Supreme Court reasonably determined the facts and properly applied law consistent with federal law on these claims. None of the comments resulted in a denial of due process, and petitioner is not entitled to federal habeas relief.

**G.      Instruction to Harvey Deiterman of His Right Against Self-Incrimination**

During trial, the prosecution notified the court that if petitioner's father, Harvey Deiterman, testified, he could be implicated in the conspiracy and face criminal charges. Harvey Deiterman was not present at the time the prosecution raised the issue with the court. The court then brought Harvey Deiterman into chambers and advised him as follows:

> Mr. Deiterman, the reason we brought you in here is the State has indicated to the court, to myself that there is some possibility that you could potentially have some liability in this matter, that the State questions your actions in this matter potentially.

The State requested that you be advised by myself prior to your testimony today that you do have a right not to incriminate yourself. Now, I will tell you I don't know if the *Miranda* rights apply in this situation and I don't know if anything you might potentially say would tend to incriminate you, but I felt I would go ahead and advise you that you obviously have a right not to incriminate yourself. Do you understand? That's the so-called Fifth Amendment privilege against self-incrimination. So I'm advising you that you do have that right prior to your testimony today, tomorrow or whenever it is you testify, if you would desire to talk to a lawyer I would certainly give you that opportunity. Again, I don't know if what you would say would tend to incriminate you. I don't know what you're going to say frankly. But I wanted to advise you that you do have the right to consult with a lawyer and not to say anything that would tend to incriminate yourself in any proceedings. Do you understand that, sir?

(R. Vol. 21 at 11–12.)  Harvey Deiterman stated that he understood his rights and then testified for the defense later that day.

The Kansas Supreme Court held that neither the prosecutor's actions nor the trial court's actions were improper and noted that petitioner did not suffer any actual prejudice because Harvey Deiterman still testified at trial.  *State v. Deiterman*, 29 P.3d 411, 421–22 (Kan. 2001).  The court's decision is consistent with *Webb v. Texas*, 409 U.S. 95, 97–98 (1972) (finding that a trial judge's "lengthy and intimidating warning" and "threatening remarks" violated the Due Process Clause because it caused the defendant's only witness not to testify), and other federal law.  *See, e.g., United States v. Serrano*, 406 F.3d 1208, 1215–16 (10th Cir. 2005) (finding no error in trial court's decision to "express[] a legitimate concern" to two witnesses that their "truthful testimony could subject them to prosecution," even when the witnesses then elected not to testify).  The court finds that the state court did not reach a decision inconsistent with federal law.

**H.    Cumulative Error**

Petitioner next claims that cumulatively, the errors committed by the trial court denied him a fair trial.  "Cumulative error analysis is an extension of harmless error," and a court "'conduct[s] the same inquire as for individual error,' focusing on 'the underlying fairness of the trial.'"  *Darks v.*

*Mullin*, 327 F.3d 1001, 1018 (10ᵗʰ Cir. 2003) (citations omitted).  "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Id.*

The Kansas Supreme Court held that since it had found no error at all, the cumulative error argument necessarily failed.  Where a court finds error, but concludes that it is not reversible, the Kansas Supreme Court's rationale "would render the cumulative error inquiry meaningless, since it indicates that cumulative error may be predicated only upon individual error already requiring reversal."  *Willingham v. Mullin*, 296 F.3d 917, 935 (10ᵗʰ Cir. 2002).  In that instance, the federal court would review the argument *de novo.  See id.*

Here, the Kansas Supreme Court's analysis is not contrary to federal law.  Because the court found no errors at all—not even harmless errors— (a finding with which this court ultimately agrees), there is no harmless error to aggregate.  Even if the court were to reexamine the argument *de novo*, however, the result would be the same.  Considering the record as a whole and the alleged errors in aggregate, the court concludes that petitioner's right to a fair trial was not substantially impaired.  To the extent that the trial court erred at all, none of the errors was significant.  *See Darks*, 327 F.3d at 1019 (citing *Alvarez v. Boyd*, 225 F.3d 820, 824 (7ᵗʰ Cir. 2000) ("[C]ourts must be careful not to magnify the significance of errors which had little importance.")).  And there is not a reasonable probability that the jury would have acquitted petitioner in the absence of the errors.  *See Hooper v. Mullin*, 314 F.3d 1162, 1178 (10ᵗʰ Cir. 2002).  The evidence of petitioner's guilt was overwhelming.  In addition to the direct testimony of his co-conspirators, multiple disinterested parties corroborated facts indicating that petitioner was in Kansas, not Texas, on the day of the murder.  Even when viewed cumulatively, the court finds that any errors did not have a sufficiently

-10-

harmful effect as to deny petitioner a fair trial.

**I.    Sufficiency of Evidence to Support Convictions**

When evaluating whether evidence was sufficient to support a conviction, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted) (emphasis in original); *Romano v. Gibson*, 239 F.3d 1156, 1164 (10th Cir. 2001) (citing *Jackson*, 443 U.S. at 319). The court neither weighs conflicting evidence nor considers the witnesses' credibility. *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1993). And the court is bound to accept the jury's verdict "as long as it is within the bounds of reason." *Kelly v. Roberts*, 998 F.2d 802, 808 (10th Cir. 1993) (citations omitted).

Where the petitioner challenges the state court's conclusion that the facts support his conviction, the question presented for the federal court is one of law, which is governed by 28 U.S.C. § 2254(d)(1). *Torres v. Mullin*, 317 F.3d 1145, 1151–52 (10th Cir. 2003). The relevant inquiry is whether the state court's decision was contrary to, or involved an unreasonable application of *Jackson*. In making this inquiry, the court applies state law regarding the substantive elements of the offense. *Id.* at 1152 (citations omitted).

Here, the Kansas Supreme Court held that beyond the testimony of the accomplices, there was substantial evidence of petitioner's acts in conspiring to commit the murder and committing the murder. *Deiterman*, 29 P.3d at 423. The court also held that the evidence supported the aggravated robbery conviction:

> Examining the evidence in a light most favorable to the prosecution, after [petitioner] shot the victim, once from a distance, and then a second time in the head from close range, he reached into the victim's pocket and took out his wallet. He then entered

-11-

the getaway car and left the scene.  This evidence reflects that [petitioner] knowingly took the victim's wallet, that he used force in order to obtain the wallet, and that he was armed with a deadly weapon during the commission of the crime.

*Id.* at 993.

The court has reviewed the record, including the entire trial transcript.  Upon such review, the court finds that the Kansas Supreme Court applied the correct standard of review, and that its decision is reasonable and supported by the record.  The court will not discuss all of the evidence again here, but suffice it to say, the evidence supports a finding that petitioner agreed to murder James Patrick Livingston for money, shot Mr. Livingston twice, and took his wallet before fleeing to make the murder look like a robbery.  The Kansas Supreme Court's decision was not contrary to, and did not involve an unreasonable application of, *Jackson*.  *See* 28 U.S.C. § 2254(d)(1).

**J.     Sufficiency of Evidence to Support Sentence**

Petitioner contends that the state district court erred in sentencing him to a "Hard 40."  Once again, petitioner raised this issue before the state court on the basis of state law, and the Kansas Supreme Court decided the issue according to state law.  Because it was not framed as a constitutional claim, this court will not reexamine the state court determination on a state law question.  *See Estelle*, 502 U.S. at 67–68.  The only way petitioner would be entitled to relief now if the state court's application of the state sentencing law was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation."  *Richmond v. Lewis*, 506 U.S. 40, 50 (1992).  The court finds no support in the record for such a determination.

**K.     Ineffective Assistance of Counsel**

The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance.  *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*).  Under *Strickland*, a

-12-

petitioner bears the burden of satisfying a two-pronged test to prevail.  First, he must show that his

attorney's "performance was deficient" and "fell below an objective standard of reasonableness."

*Strickland*, 466 U.S. at 687–88.  The court affords considerable deference to an attorney's strategic

decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

Second, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Id.*  "[T]here is no reason for a court deciding an ineffective

assistance claim to . . . address both components of the inquiry if the [petitioner] makes an

insufficient showing on one. . . .  If it is easier to dispose of an ineffectiveness claim on the ground

of lack of sufficient prejudice . . . that course should be followed."  *Id.* at 697.

**1.      *Failure to Renew Change of Venue Motion***

Petitioner's counsel's failure to renew his motion for a change of venue at the end of voir

dire was neither objectively unreasonable nor prejudicial.  As previously noted, voir dire proceeded

smoothly and quickly, giving the court no reason to reverse its earlier ruling that venue was

appropriate.  Rulings from the trial court and the Kansas appellate courts suggest that the denied

venue change would have stood up on appeal.  And there is no indication that a different venue

would have netted petitioner a different outcome.  The Kansas Court of Appeals applied the

appropriate standard and made a reasonable determination of the facts.  Petitioner is not entitled to

relief on this issue.

**2.      *Failure to Ask the Court to Instruct Jury Pool to Ignore Statements***

In an effort to find out how much jurors knew about the case, petitioner's counsel asked

jurors specifically what they had read or seen in the local media.  The attorneys and court were aware that he might "taint" the jury in doing so, and the court told counsel that he would have to "live with the consequences."  (R. Vol. 16 at 144.)  The court has reviewed the voir dire questioning on this issue, and finds no responses by jurors that would require a curative instruction.  The trial judge and attorneys repeatedly told panel members that they must set aside any knowledge about the case and decide the case solely on the evidence.  Based on these facts, the court concludes that it was not objectively unreasonable for counsel not to request an additional instruction.  Moreover, petitioner fails to show that an instruction would have resulted in a more impartial jury or that the results of the proceedings would be different.  In so finding, the Kansas Court of Appeals applied the appropriate standard and made a reasonable determination of the facts.  Petitioner is not entitled to relief.

### 3.   *Investigation of Alibi Witnesses and Exculpatory Evidence*

The trial court heard testimony from petitioner's attorney about his investigative efforts.  He located and interviewed a number of witnesses in Texas, where petitioner claimed to be during the murder.  He spoke with "more than five and fewer than twenty" people.  (R. Vol. 2 at 16.)  Most of the potential witnesses could not say with certainty whether they had seen petitioner during the relevant time period.  Counsel decided not to call one of the potential witnesses because he was an inmate.  He stated that he would have called petitioner's sister-in-law if she attended trial, but that he wanted to leave the decision up to her because she was pregnant at the time.

The Kansas Court of Appeals reviewed the testimony at length and concluded that counsel's performance was not deficient.  This court has also reviewed the testimony and reaches the same conclusion.  The Kansas Court of Appeals made a reasonable determination of the facts and correctly applied federal law in determining that counsel was not ineffective.

-14-

**L.     Conflict of Interest**

Petitioner alleges that his trial counsel inappropriately represented him while he had a conflict of interest.  Counsel's former wife was related by marriage to a distant relative of the victim.  Counsel did not know the victim or any members of the victim's immediate family.  The court finds nothing in the nature of this relationship to warrant habeas relief.  To succeed on a conflict of interest claim, petitioner must show that his counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (citations omitted).  A possible conflict will not justify relief.  *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  At best, counsel's attenuated relationship with the victim presents just that: a possible conflict.  The Kansas Court of Appeals applied the correct standard to this claim and made a reasonable determination of the facts in light of the evidence.

**M.     Prosecution Withholding Exculpatory Evidence**

Petitioner did not present his claim that the prosecution withheld exculpatory evidence on direct appeal.  For this reason, the Kansas Court of Appeals held that the claim was procedurally defaulted and declined to address the issue.  *See Deiterman*, 2005 WL 400408, at *11–*12.  Because the appellate court rested its decision on an independent and adequate state ground, *see Hickman*, 160 F.3d at 1271, the court determines that this claim is procedurally defaulted.  Petitioner offers neither cause nor prejudice for his failure to properly present the claim and does not demonstrate how a miscarriage of justice will result if this court does not address the claim.  *See Coleman*, 501 U.S. at 750.  Petitioner is not entitled to relief on this claim.

**IV.     CONCLUSION**

None of the grounds petitioner raises entitle him to relief.  The court's review of the record shows that petitioner received an exceedingly fair trial.  The trial judge was astute, being deliberate

-15-

in his rulings and solidly basing them in the law.  Petitioner was represented by competent counsel with extensive experience.  Counsel thoroughly cross-examined the prosecution's witnesses and was able to emphasize inconsistencies in their testimony.  He presented petitioner's case well and ensured that the jury had an opportunity to hear all of the relevant facts before determining whether petitioner was guilty of the counts charged.  The prosecution's case was strong, however, and the jury's verdict was well within the evidence.  As previously noted, the evidence of petitioner's guilt was overwhelming.  For all of these reasons and those stated above, the court finds no error in petitioner's case justifying habeas relief.

**IT IS THEREFORE ORDERED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is denied.

Dated this 23rd day of January 2008, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

-16-